ELIZA TEHAN and ANN M. HERDER.

*v.*

The executors of WILLIAM MALOY, deceased.

1. Where two or more executors exhibit a joint account for settlement, and procure the same to be finally settled and allowed, they stand jointly liable for the balance shown by the account to be in their hands.

2. A sentence or decree allowing an account is conclusive upon all parties, except fraud or mistake be proved.

3. An account, which appears on its face to be joint, may be shown to be separate, and where an account is stated both ways, first jointly and then separately, the court may, if such appears to have been the intention of the accountants, treat it as a separate account.

On appeal from the ruling of a master as to the admissibility of evidence.

*Mr. Willard P. Voorhees,* for the appellants.

*Mr. Alan H. Strong,* for the respondents.

VAN FLEET, V. C.

The principal object of this suit is to procure a decree adjudging that the defendants, Helen W. Maloy and Lewis Applegate, are jointly liable as the executrix and executor of the last will and testament of William Maloy, deceased, for that part of

the testator's estate in which the complainants are interested. The testator gave the one-third of his estate to his widow, the defendant, Helen W. Maloy. He also gave her the use, during life, of an additional one-sixth of his estate, with remainder on her death to the complainant, Eliza Tehan, and he gave the use of the other half of his estate to the complainant, Anna M. Herder, during life, with remainder on her death to Eliza Tehan. The ground on which it is claimed, by the bill, that the defendants are jointly liable for that part of the estate which is the subject-matter of this suit is, that in June, 1872, they filed and swore to a joint account, and procured the same to be allowed by the orphans court of the county of Middlesex.

The account is joint in form. On the debit side of the account, under a caption in these words, "These accountants charge themselves," the defendants are jointly charged with items amounting in the whole to $23,710.28, and on the credit side, under a caption "These accountants pray allowance," the defendants are jointly credited with sums aggregating $4,434.77, showing a balance in their hands of $19,275.51. The account is sworn to by both defendants, and, in the order allowing the account, it is recited that proof had been made that the defendants had given notice, according to law, of their intention to settle their account at that time. The account, on its face, does not state that it is the final account of the administration of testator's estate by the defendants, in their character as executors, but an inspection of the account shows that it is so in fact. That is its true character, both in fact and in law.

Mrs. Maloy answers alone. Applegate has suffered a decree *pro confesso* to be taken against him. Mrs. Maloy, by her answer, says that, prior to the date on which the account was allowed, Applegate, her co-executor, had received, taken charge of and managed the whole of the testator's estate, to her exclusion, and with the full knowledge and assent of the complainants, who, as she has been informed, requested him so to do, and that, having paid the testator's debts, funeral and testamentary expenses, and collected the assets of the estate, Applegate prepared his account, as the same was passed by the court, and

Tehan v. Maloy.

brought the same to her, and that she, at his request, signed the same, and solely because he requested her so to do, and that the same was afterwards allowed by the court as a partial settlement of the testator's estate. Under this clause of the answer, Mrs. Maloy offers to prove, by her own oath, that at no time, since she qualified as executrix, has any of the testator's securities been in her custody or possession. This evidence was objected to, and the master ruled it out. An appeal has been taken, and the question now before the court is whether the master's ruling was correct or not.

The rule respecting the liability of executors, who file a joint account and procure the same to be allowed, was stated by Chancellor Williamson, in *Laroe* v. *Douglass, 2 Beas. 308, 310,* as follows: "The law is well settled in this state, that when executors exhibit for settlement a joint account, and when, by the decree of the Orphans Court, such account is finally settled and allowed, the executors are jointly charged with the balance thus ascertained to be in their hands. The decree is in the nature of a judgment." He also said, in substance, that if one of two executors is unwilling to incur a joint liability with his co-executor, he may avoid it by accounting separately for the funds which have come to his hands; but if he accounts jointly, and submits to a decree finding the funds in the hands of the executors jointly, the parties interested may rely on the decree, and are not driven to the necessity of discovering in whose hands the funds are, or in what proportion the executors are liable. The rule, as thus stated, has been the rule of judgment of this court from first to last. *Fennimore* v. *Fennimore, 2 Gr. Ch. 292; Schenck* v. *Schenck, 1 C. E. Gr. 174; Suydam* v. *Bastedo, 13 Stew. Eq. 433; English* v. *Newell, 15 Stew. Eq. 76.* It simply affirms what the statute, in force at the time the defendants' account was allowed, plainly declared, namely, that the sentence or decree of the orphans court, on the final settlement and allowance of the accounts of executors, shall be conclusive upon the parties, except some fraud or mistake therein be proved. *Nix. Dig. 645.* An account, however, which is stated on its face to be joint, but which is not so in fact, but shows plainly, by the

manner in which it is stated, that it was intended to be separate and not joint, will not be held to be joint. *Fennimore* v. *Fennimore, supra.* In that case, the executors, after stating a joint account, both as to receipts and disbursements, stated, as a part of the same account, on the same paper, a separate account between themselves, showing what each had received and disbursed, and also the balance remaining in the hands of each. Chancellor Vroom held, that the accounts were separate and not joint. He said it was very evident, from the manner in which the accounts were stated, that the executors meant to show the amount of assets in each one's hands, and to have their separate liabilities adjusted and sanctioned by judicial authority. And it has also been held, that an account will not be held to be joint, though it be stated to be so on its face, if it be shown that one or more of the executors did not swear to it, nor participate in having it filed and allowed. *English* v. *Newell, supra; Beatty* v. *Cory Universalist Society, 14 Stew. Eq. 563.*

No fraud is charged in the answer in this case; no mistake is alleged. So far as appears, Mrs. Maloy, in signing and swearing to the account, was not tricked, by representations of any kind, into doing something which she would not have done if no representations had been made; nor does she even claim or pretend that she acted without comprehending or fully understanding what she was doing. The statement of her answer on this point, in substance, is, that, with full knowledge that the whole of the estate was in the possession and under the control of her co-executor, she, on the simple request of her co-executor, voluntarily, and without the practice of deceit of any kind, joined with him in the account, charging herself, jointly with him, with the whole estate. With her answer in this form, it is impossible for me to see of what possible service or advantage it will be to her to show, that none of the testator's securities were ever in her custody or possession. Her liability, according to the well-established rule, rests, not on the fact that the assets were in her possession or under her control at the time she charged herself with them, but solely on the ground that she and her co-executor have jointly charged themselves with them. Her liability grows out of her

admission made *in judicio*, and the judicial sentence pronounced thereon.

The evidence objected to was wholly immaterial, and was, therefore, properly overruled. The master's ruling must be affirmed, with costs.